# EXHIBIT B

FERRELL COMPANIES, INC.
EMPLOYEE STOCK OWNERSHIP TRUST

McDermott, Will & Emery
Chicago

TABLE OF CONTENTS

ARTICLE 1 ..... 1
Name ..... 1

ARTICLE 2 ..... 2
Management and Control of Trust Fund Assets ..... 2
The Trust Fund ..... 2
Responsibility of Trustee ..... 2
General Powers ..... 2
Compensation and Expenses ..... 6
Exercise of Trustee's Duties ..... 6
Plan Administration ..... 7
Continuation of Powers Upon Trust Termination ..... 7

ARTICLE 3 ..... 8
Provisions Related to Investment in Company Stock ..... 8
Investment of Cash ..... 8
Stock Dividends, Splits and Other Capital Reorganizations ..... 8
Voting of Shares and Tender or Exchange Offers ..... 8
Put Option ..... 8

ARTICLE 4 ..... 9
Miscellaneous ..... 9
Disagreement as to Acts ..... 9
Persons Dealing with Trustee ..... 9
Benefits May Not Be Assigned or Alienated ..... 9
Evidence ..... 9
Waiver of Notice ..... 9
Counterparts ..... 9
Governing Laws and Severability ..... 9
Successors, Etc ..... 9
Action ..... 10
Conformance with Plan ..... 10
Indemnification ..... 10
Headings ..... 10

ARTICLE 5 ..... 10
No Reversion to Company ..... 10

ARTICLE 6 ..... 11
Change of Trustee ..... 11
Resignation ..... 11

Removal of the Trustee ........ 11
Duties of Resigning or Removed Trustee and of Successor Trustee ........ 12
Filling Trustee Vacancy ........ 12

ARTICLE 7 ........ 12
Additional Employers ........ 12

ARTICLE 8 ........ 13
Amendment, Termination and Merger ........ 13
Amendment ........ 13
Termination ........ 13
Merger ........ 14

FERRELL COMPANIES, INC.
EMPLOYEE STOCK OWNERSHIP TRUST

THIS AGREEMENT, made effective as of the 1st day of August, 1997, by and between FERRELL COMPANIES, INC., a Delaware corporation (the "Company"), and LASALLE NATIONAL BANK, and its successor or successors and assigns in the trust hereby evidenced, as Trustee (the "Trustee").

WITNESSETH THAT:

WHEREAS, the Company has established an employee stock ownership plan (as described in Section 4975(e)(7) of the Internal Revenue Code of 1986, as amended) (the "Code") which is known as the FERRELL COMPANIES, INC. EMPLOYEE STOCK OWNERSHIP PLAN (the "Plan"); and

WHEREAS, the Plan has been established for the exclusive benefit of eligible employees of the Company and those of any Related Company (as defined in Article 7) which adopts the Plan and becomes a party to this Trust Agreement as provided in Article 7 (the Company and the Related Companies that are parties hereto are sometimes referred to below collectively as the "Employers" and individually as an "Employer");

NOW THEREFORE, pursuant to the authority delegated to the undersigned officers of the Company by resolution of its Board of Directors adopted on July 13, 1998, IT IS AGREED, by and between the parties hereto, that the trust provisions contained herein shall constitute the agreement between the Company and the Trustee in connection with the Plan; and

IT IS FURTHER AGREED, by and between the parties hereto as follows:

## ARTICLE 1

### Name

This Trust Agreement and Trust hereby evidenced shall be known as the "FERRELL COMPANIES, INC. EMPLOYEE STOCK OWNERSHIP TRUST."

## ARTICLE 2

### Management and Control of Trust Fund Assets

2.1. The Trust Fund. The Trust Fund as of any date means all property of every kind then held by the Trustee. The Trustee may manage, invest and account for all contributions made by the several Employers under the Plan as one Trust Fund. If, for any reason, it becomes necessary to determine the portion of the Trust Fund allocable to each of the employees and former employees of any Employer as of any date, the Plan Administrator (as defined in paragraph 2.6 below) shall specify such date as an Accounting Date, and after all adjustments required under the Plan as of that Accounting Date have been made, the portion of the Trust Fund attributable to each of the employees and former employees shall be determined by the Trustee with the assistance and cooperation of the Plan Administrator, and shall consist of an amount equal to the aggregate of the account balances of each employee and former employee of that Employer plus an amount equal to any allocable contributions made by that Employer since the close of the immediately preceding Accounting Date.

2.2. Responsibility of Trustee. The Trustee shall not be responsible in any way for the adequacy of the Trust Fund to meet and discharge any or all liabilities under the Plan or for the proper application of distributions made or other action taken upon the written direction of the Plan Administrator. The powers, duties and responsibilities of the Trustee shall be limited to those set forth in this Trust Agreement, and nothing contained in the Plan, either expressly or by implication, shall be deemed to impose any additional powers, duties or responsibilities on the Trustee.

2.3. General Powers. Subject to the provisions of paragraphs 2.5 and 2.6 and Article 3, with respect to the Trust Fund, the Trustee shall have the following powers, rights and duties in addition to those provided elsewhere in this Trust Agreement or by law:

(a) to receive and to hold all contributions paid to it under the Plan; provided, however, that the Trustee shall have no right, duty or obligation to require or demand that any contributions be made to it by the Employers or to determine that the contributions received by it comply with the provisions of the Plan or with any resolution of the Board providing therefor;

(b) as directed by the Plan Administrator, to retain in cash (pending investment, reinvestment or the distribution of dividends) such reasonable amount as may be required for the proper administration of the Trust and to invest such cash as provided in paragraph 3.1, provided, however, that pending receipt of directions from the Plan Administrator, the Trustee may retain reasonable amounts of cash, in its discretion, without any liability for interest;

(c) as directed by the Plan Administrator, to make distributions from the Trust Fund to such persons, in such manner, at such times and in such forms (Company Stock, cash or property, or a combination of each) as directed by the Plan Administrator without inquiring as to whether a payee is entitled to the payment, or as to whether a payment is proper, and without liability for a payment made in good faith without actual notice or knowledge of the changed condition or status of the payee. If any payment of benefits made from the Trust Fund by the Trustee is not claimed, the Trustee shall notify the Plan Administrator of that fact promptly. The Plan Administrator shall make a diligent effort to ascertain the whereabouts of the payee or distributee of benefits returned unclaimed. The Trustee shall dispose of such payments as the Plan Administrator shall direct. The Trustee shall have no obligation to search for or ascertain the whereabouts of any payee or distributee of benefits from the Trust Fund;

(d) as directed by the Plan Administrator, to vote any stocks (including Company Stock, which shall be voted as provided in Section 8 of the Plan, as that Section may be amended from time to time), bonds or other securities held in the Trust, or otherwise consent to or request any action on the part of the issuer in person, by proxy or power of attorney;

(e) (i) as directed by the Plan Administrator, to contract or otherwise enter into transactions between itself, as Trustee, and the Company, any Company shareholder or any third-party, for the purpose of acquiring or selling Company Stock and, subject to the provisions of paragraph 2.5, to retain such Company Stock;

(ii) notwithstanding subparagraph (i) above, the Trustee shall have complete and independent discretion with respect to the Trust's decision to purchase Company Stock in July, 1998 with the proceeds of an Acquisition Loan, as defined in subsection 4.3 of the Plan, and to execute any and all documents to effectuate such purchase;

(f) to compromise, contest, arbitrate, settle or abandon claims and demands by or against the Trust Fund;

(g) to begin, maintain or defend any litigation necessary in connection with the investment, reinvestment and administration of the Trust, and, to the extent not paid from the Trust Fund, pursuant to paragraph 4.11, the Company shall indemnify the Trustee against all expenses and liabilities reasonably sustained or anticipated by it by reason thereof (including reasonable attorneys' fees);

(h) to retain any funds or property subject to any dispute without liability for the payment of interest, or to decline to make payment or delivery thereof until final adjudication is made by a court of competent jurisdiction;

(i) to report to the Company as of the last day of each Plan Year of the Plan (which shall be the same as the Trust's fiscal year), as of any Accounting Date (or as soon thereafter as practicable), or at such other times as may be required under the Plan, the then "Net Worth" of the Trust Fund, which is defined as the fair market value of all property held in the Trust Fund, reduced by any liabilities other than liabilities to Participants in the Plan and their Beneficiaries, as determined by the Trustee;

(j) to furnish to the Company and the Plan Administrator an annual written account and accounts for such other periods as may be required under the Plan, showing the Net Worth of the Trust Fund at the end of the period, all investments, receipts, disbursements and other transactions made by the Trustee during the period, and such other information as the Trustee may possess which the Company requires in order to comply with Section 103 of ERISA. The Trustee shall keep accurate accounts of all investments, earnings thereon, and all accounts, books and records related to such investments shall be open to inspection by any person designated by the Company or the Plan Administrator. All accounts of the Trustee shall be kept on an accrual basis. If, during the term of this Trust Agreement, the Department of Labor issues regulations under ERISA regarding the valuation of securities or other assets for purposes of the reports required by ERISA, the Trustee shall use such valuation methods for purposes of the accounts described by this subparagraph. If shares of Company Stock are not traded with sufficient volume or frequency, as determined by the Plan Administrator, to be considered as being readily tradable on a national securities market or exchange, all valuations of shares of Company Stock shall originally be made by an "Independent Appraiser" (as described in Section 401(a)(28)(C) of the Code) retained by the Trustee, and reviewed and finalized by the Trustee in accordance with Section 3(18)(B) of ERISA. The Company may approve such accounting by written notice of approval delivered to the Trustee or by failure to express objection to such accounting in writing delivered to the Trustee within forty-five (45) days from the date upon which the accounting was delivered to the Company. Upon the receipt of a written approval of the accounting, or upon the passage of the period of time within which objection may be filed without written objections having been delivered to the Trustee, such accounting shall be deemed to be approved, and the Trustee shall be released and discharged as to all items, matters and things set forth in such account, as fully as if such accounting had been settled and allowed by decree of a court of competent jurisdiction in an action or proceeding in which the

Trustee, the Company and all persons having or claiming to have any interest in the Trust Fund or under the Plan were parties.

(k) as directed by the Plan Administrator, to pay any estate, inheritance, income or other tax, charge or assessment attributable to any benefit which it shall or may be required to pay out of such benefit; and to require before making any payment such release or other document from any taxing authority and such indemnity from the intended payee as the Trustee shall deem necessary for its protection;

(l) to employ and to reasonably rely upon information and advice furnished by agents, attorneys, Independent Appraisers, accountants or other persons of its choice for such purposes as the Trustee considers desirable;

(m) to assume, until advised to the contrary, that the Trust evidenced by this Agreement is qualified under Section 401(a) of the Code and is entitled to tax exemption under Section 501(a) thereof;

(n) to have the authority to invest and reinvest the assets of the Trust Fund, upon direction from the Plan Administrator, in personal property of any kind, including, but not limited to, bonds, notes, debentures, mortgages, equipment trust certificates, investment trust certificates, guaranteed investment contracts, preferred or common stock, and registered investment companies; provided, however, that all investments in Company Stock shall be undertaken pursuant to the provisions of paragraph 3.1. The Trustee shall follow the directions of the Plan Administrator and shall have no duty or obligation to review the assets from time to time so acquired, nor to make any recommendations with respect to the investment, reinvestment or retention thereof;

(o) as directed by the Plan Administrator, to exercise any options, subscription rights, calls and other privileges with respect to Trust assets, or assign such rights, subject to the provisions of Article 3;

(p) to register ownership of any securities or other property held by it in its own name or in the name of a nominee, with or without the addition of words indicating that such securities are held in a fiduciary capacity, and may hold any securities in bearer form, but the books and records of the Trustee shall at all times reflect that all such investments are part of the Trust;

(q) (i) at the direction of the Plan Administrator, to borrow such sum or sums from time to time as the Trustee considers necessary or desirable and in the best interest of the Trust Fund, including to purchase Company Stock, and

for that purpose to pledge the Company Stock so purchased (subject to the provisions of Code Section 4795(c) and the regulations issued thereunder);

(ii) notwithstanding subparagraph (i) above, the Trustee shall have complete and independent discretion with respect to the decision to borrow funds in July, 1998 for the Trust's initial stock purchase, and to execute any and all documents to effectuate such borrowing;

(r) to deposit securities with a clearing corporation as defined in Article 8 of the Delaware Uniform Commercial Code. The certificates representing securities, including those in bearer form, may be held in bulk form with, and may be merged into, certificates of the same class of the same issuer which constitute assets of other accounts or owners, without certification as to the ownership attached. Utilization of a book-entry system may be made for the transfer or pledge of securities held by the Trustee or by a clearing corporation. The Trustee shall at all times, however, maintain a separate and distinct record of the securities owned by the Trust;

(s) to participate in and use the Federal Book-Entry Account System, a service provided by the Federal Reserve Bank for its member banks for deposit of Treasury securities;

(t) to receive and hold in the Trust Fund earnings, dividends, distributions and other payments or adjustments to the assets in the Trust Fund; and

(u) at the direction of the Plan Administrator, to perform any and all other acts which are necessary or appropriate for the proper management, investment and distribution of the Trust Fund.

2.4. Compensation and Expenses. The Trustee shall be entitled to reasonable compensation for its services, as agreed to between the Company and the Trustee from time to time in writing, and to reimbursement of all reasonable expenses incurred by the Trustee in the administration of the Trust. The Trustee is authorized to pay from the Trust Fund all expenses of administering the Plan and Trust, including its compensation and any accounting and legal expenses, to the extent they are not paid directly by the Employers. The Trustee shall be fully protected in making payments of administrative expenses pursuant to the written directions of the Plan Administrator.

2.5. Exercise of Trustee's Duties. The Trustee shall discharge its duties hereunder solely in the interest of the Plan's Participants and other persons entitled to benefits under the Plan, and:

(a) for the exclusive purpose of:

(i) providing benefits to Participants and other persons entitled to benefits under the Plan; and

(ii) defraying reasonable expenses of administering the Plan;

(b) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims; and

(c) in accordance with the documents and instruments governing the Plan unless, in the good faith judgment of the Trustee, the documents and instruments are not consistent with the provisions of ERISA.

2.6. Plan Administration. The Plan shall be administered by an Plan Administrator (the "Plan Administrator"), which shall be the Company, a committee or a person appointed by the Board of Directors of the Company and certified to the Trustee by the Board. Except as provided in subparagraphs 2.3(a), (b), (e)(ii), (f), (g), (h), (i), (j), (l), (m), (p), (q)(ii), (r), (s) and (t), the Trustee shall have no authority to act unless directed by the Plan Administrator. The Plan Administrator may authorize one or more individuals to sign all communications between the Plan Administrator and Trustee and shall at all times keep the Trustee advised of the identity of the individuals authorized to sign on behalf of the Plan Administrator, and provide specimen signatures thereof. With the Trustee's prior written consent, the Plan Administrator may authorize the Trustee to act without specific directions or other directions or instructions from the Plan Administrator on any matter or class of matters with respect to which directions or instructions from the Plan Administrator are called for hereunder. The Trustee shall be fully protected in relying on any communication sent by any authorized person and shall not be required to verify the accuracy or validity of any signature unless the Trustee has reasonable grounds to doubt the authenticity of any signature. If the Trustee requests any directions hereunder and does not receive them, the Trustee shall act or refrain from acting, as it may determine, and shall be indemnified by the Company for such action or inaction pursuant to paragraph 4.11.

2.7. Continuation of Powers Upon Trust Termination. Notwithstanding anything to the contrary in this Agreement, upon termination of the Trust, the powers, rights and duties of the Trustee hereunder shall continue until all Trust Fund assets have been liquidated.

## ARTICLE 3

## Provisions Related to Investment in Company Stock

3.1. Investment of Cash. If an Employer's contribution made pursuant to the provisions of Section 4 of the Plan for any Plan Year is in cash, such cash shall be used by the Trustee first to make any scheduled amortization payment on an Acquisition Loan and, if any amounts remain thereafter, as the Trustee is directed in writing by the Plan Administrator. Subject

to the provisions of paragraph 2.5, any cash dividends received by the Trustee on Company Stock held in the Trust Fund shall be applied, after the receipt of such cash dividends, as directed by the Plan Administrator pursuant to Section 10 of the Plan. The Trustee shall purchase Company Stock with the assets contained in the Participants' ESOP Cash Accounts upon the direction of the Plan Administrator. If directed by the Plan Administrator, the Trustee shall purchase Company Stock from the Company or from any shareholder, and such stock may be outstanding, newly issued or treasury stock, except that the Trustee has independent and sole discretion to make a purchase of Company Stock for the Trust in July, 1998. When such stock is not publicly traded, all such purchases must be at a price not in excess of fair market value, as determined by an Independent Appraiser. Pending investment of cash in Company Stock, such cash may be invested in savings accounts, certificates of deposit, high-grade short-term securities, common or preferred stocks, bonds, or other investments, or may be held in cash. Such investments may include any common or collective funds or mutual funds (including a common, collective, or mutual fund for which the Trustee or one of the affiliates of the Trustee serves as investment advisor) maintained as a short-term investment fund or in other types of short-term investments.

3.2. Stock Dividends, Splits and Other Capital Reorganizations. Any Company Stock received by the Trustee from a stock split or dividend or as a result of a reorganization or other recapitalization of the Company shall be allocated as of each Accounting Date under the Plan in proportion to the Company Stock to which it is attributable.

3.3. Voting of Shares and Tender or Exchange Offers. Company Stock held in the Trust Fund shall be voted by the Trustee in the manner set forth in Section 8 of the Plan. If any tender or exchange or similar offer to purchase all or any portion of outstanding Company Stock is made by any person, the Trustee shall tender the shares as provided in Section 8 of the Plan.

3.4. Put Option. If the distribution of a Participant's Account is to be made in cash, if a Participant exercises its rights under subsection 7.13 of the Plan, or the Trustee expects to incur substantial Trust expenses which will not be paid directly by the Employers, and the Trustee determines that the Trust Fund has insufficient cash to make anticipated distributions or pay Trust expenses, the Trust shall have a "put option" on Company Stock it holds to the Company for the purpose of making such anticipated distributions and paying such expenses.

## ARTICLE 4

## Miscellaneous

4.1. Disagreement as to Acts. If there is a disagreement between the Trustee and anyone as to any act or transaction reported in any accounting, the Trustee shall have the right to have its account settled by a court of competent jurisdiction.

4.2. Persons Dealing with Trustee. No person dealing with the Trustee shall be required to see to the application of any money paid or property delivered to the Trustee, or to

determine whether or not the Trustee is acting pursuant to any authority granted to it under this Agreement or the Plan.

4.3. Benefits May Not Be Assigned or Alienated. The interests under the Plan and this Agreement of Participants and other persons entitled to benefits under the Plan are not subject to the claims of their creditors and may not be voluntarily or involuntarily assigned, alienated or encumbered, except to the extent that the Plan Administrator directs the Trustee that any such interests are subject to a qualified domestic relations order, as defined in Section 414(p) of the Code.

4.4. Evidence. Evidence required of anyone under this Agreement may be by certificate, affidavit, document or other instrument which the person acting in reliance thereon considers pertinent and reliable, and signed, made or presented by the proper party.

4.5. Waiver of Notice. Any notice required under this Agreement may be waived in writing by the person entitled thereto.

4.6. Counterparts. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original and no other counterparts need be produced.

4.7. Governing Laws and Severability. This Agreement shall be construed and administered according to the laws of the State of Illinois to the extent that such laws are not preempted by the laws of the United States of America. If any provision of this Agreement is held illegal or invalid, the illegality or invalidity shall not affect the remaining provisions of the Agreement, but shall be severable, and the Agreement shall be construed and enforced as if the illegal or invalid provision had never been inserted herein.

4.8. Successors, Etc. This Agreement shall be binding on the Employers, and any successor thereto by virtue of any merger, sale, dissolution, consolidation or reorganization, on the Trustee and its successor and on all persons entitled to benefits under the Plan and their respective heirs and legal representatives.

4.9. Action. Any action required or permitted to be taken by the Company under this Agreement shall be by resolution of its Board of Directors or by a person or persons authorized by resolution of its Board of Directors. The Trustee shall not recognize or take notice of any appointment of any representative of the Company or Plan Administrator unless and until the Company or the Plan Administrator shall have notified the Trustee in writing of such appointment and the extent of such representative's authority. The Trustee may assume that such appointment and authority continue in effect until it receives written notice to the contrary from the Company or Plan Administrator. Any action taken or omitted to be taken by the Trustee by authority of any representative of the Company or Plan Administrator within the scope of his authority shall be as effective for all purposes hereof as if such action or nonaction had been authorized by the Company or Plan Administrator.

4.10. Conformance with Plan. Unless otherwise indicated in this Trust Agreement, all capitalized terms shall have the meaning as stated in the Plan. To the extent the provisions of the Plan and this Agreement conflict, the provisions of the Plan shall govern; provided however, that the Trustee's duties and obligations shall be determined solely under this Trust Agreement.

4.11. Indemnification. The Company shall indemnify and save harmless the Trustee, its directors, officers, employees, successors and assigns from and against any and all liability, including all expenses reasonably incurred in its defense, pursuant to the indemnification provisions of the engagement letter between the Company and the Trustee, which is attached hereto as Exhibit A.

4.12. Headings. The headings of Sections of this Agreement are for convenience of reference only and shall have no substantive effect on the provisions of this Agreement.

## ARTICLE 5

### No Reversion to Company

No part of the corpus or income of the Trust Fund shall revert to any Employer or be used for, or diverted to, purposes other than for the exclusive benefit of Participants and other persons entitled to benefits under the Plan, provided, however, that:

(a) Each Employer's contribution under the Plan is conditioned on the initial qualification of the Plan as applied to that Employer under Section 401(a) of the Code and if the Plan does not so initially qualify, the Trustee shall, upon written direction of the Plan Administrator, return to that Employer the amount of such contribution and any increment thereon within one calendar year after the date that qualification of the Plan, as applied to that Employer, is denied, but only if the application for qualification is submitted within the time prescribed by law.

(b) If, upon termination of the Plan with respect to any Employer, any amounts are held in a 415 Suspense Account which are attributable to the contributions of such Employer and such amounts may not be credited to the Accounts of Participants, such amounts, upon the written direction of the Plan Administrator, will be returned to that Employer as soon as practicable after the termination of the Plan with respect to that Employer.

(c) Employer contributions under the Plan are conditioned upon the deductibility thereof under Section 404 of the Code, and, to the extent any such deduction of an Employer is disallowed, the Trustee shall, upon the

written direction of the Plan Administrator, return the amount of the contribution (to the extent disallowed), reduced by the amount of any losses thereon, to the Employer within one year after the date the deduction is disallowed.

(d) If a contribution or any portion thereof is made by an Employer by a mistake of fact, the Trustee shall, upon written direction of the Plan Administrator, return the amount of the contribution or such portion, reduced by the amount of any losses thereon, to the Employer within one year after the date of payment to the Trustee.

Notwithstanding the foregoing, the Trustee has no responsibility as to the sufficiency of the Trust Fund to provide any distribution to an Employer under this Article 5.

## ARTICLE 6

## Change of Trustee

6.1. Resignation. The Trustee may resign at any time by giving thirty (30) days' advance written notice to the Company and the Plan Administrator.

6.2. Removal of the Trustee. The Company may remove the Trustee by giving thirty (30) days' advance written notice to the Trustee, subject to providing the removed Trustee with satisfactory written evidence of the appointment of a successor Trustee and of the successor Trustee's acceptance of the trusteeship.

6.3. Duties of Resigning or Removed Trustee and of Successor Trustee. If the Trustee resigns or is removed, it shall promptly transfer and deliver the assets of the Trust Fund to the successor Trustee, and may reserve such amount to provide for the payment of all fees, expenses and taxes then or thereafter chargeable against the Trust Fund, to the extent not previously paid by the Company. The Company shall be obligated to reimburse the Trust for any amount reserved by the Trustee. Within 120 days, the resigned or removed Trustee shall furnish to the Company and the successor Trustee an account of its administration of the Trust from the date of its last account. Each successor Trustee shall succeed to the title to the Trust Fund vested in his predecessor without the signing or filing of any further instrument, but any resigning or removed Trustee shall execute all documents and do all acts necessary to vest such title or record in any successor Trustee. Each successor shall have all the powers, rights and duties conferred by this Trust Agreement as if originally named Trustee. No successor Trustee shall be personally liable for any act or failure to act of a predecessor Trustee and no predecessor trustee shall be liable for any act of a successor trustee. With the approval of the Plan Administrator, a successor Trustee may accept the account rendered and the property delivered to it by its predecessor Trustee as a full and complete discharge to the predecessor Trustee without incurring any liability or responsibility for so doing.

6.4. Filling Trustee Vacancy. The Company may fill a vacancy in the office of Trustee as soon as practicable by a writing filed with the person or entity appointed to fill the vacancy.

## ARTICLE 7

### Additional Employers

Any Related Company (as defined below) may become a party to this Trust Agreement by:

(a) filing with the Company and the Trustee a certified copy of a resolution of its Board of Directors to that effect; and

(b) filing with the Trustee a certified copy of a resolution of the Board of Directors of the Company consenting to such action.

A "Related Company" is any corporation, trade or business during any period in which it is, along with the Company, a member of a controlled group of corporations, a group of trades or businesses under common control or an affiliated service group, as described in section 414(b), 414(c) and 414(m), respectively, of the Code or as described in regulations issued by the Secretary of the Treasury or his delegate pursuant to section 414(o) of the Code.

## ARTICLE 8

### Amendment, Termination and Merger

8.1. Amendment. While the Employers expect and intend to continue the Trust, the Company reserves the right to amend the Trust at any time pursuant to an action of the Company's Board of Directors, except that no amendment shall change the rights, duties and liabilities of the Trustee under this Trust Agreement without its prior written agreement, nor reduce a Participant's benefits to less than the amount such Participant would be entitled to receive if such Participant had resigned from the employ of the Employers on the date of the amendment. Amendments to the Trust shall be effective upon execution of such amendments by both the Company and the Trustee.

8.2. Termination. The Trust may be terminated as to all Employees on any date specified by the Company. The Trust will terminate as to any Employer on the first to occur of the following:

(a) the date it is terminated by that Employer;

(b) the date such Employer's contributions to the Trust are completely discontinued; or

(c) the date such Employer is judicially declared bankrupt under Chapter 7 of the U.S. Bankruptcy Code.

The Trustee's powers upon termination as described above will continue until liquidation of the Trust Fund, or the portion thereof attributable to an Employer, as the case may be. Upon termination of this Trust the Trustee shall first reserve such reasonable amounts as it may deem necessary to provide for the payment of any expenses, fees or taxes then or thereafter chargeable to the Trust Fund including any loans taken by the Trust pursuant to subparagraph 2.3(q), which may be paid with the proceeds of the sale of assets of the Trust Fund. Subject to such reserve, the balance of the Trust Fund shall be liquidated and distributed by the Trustee to or for the benefit of the Participants or their beneficiaries, as directed by the Plan Administrator after compliance with applicable requirements of ERISA, as amended from time to time, or other applicable law, accompanied by a certification that the disposition is in accordance with the terms of the Plan and the Trustee need not question the propriety of such certification. The Company shall have full responsibility to see that such distribution is proper and within the terms of the Plan and this Trust.

8.3. Merger. The Company may merge the Trust with the trust of another plan meeting the requirements of Code Section 401(a) and 501(a) at any time with the approval of the Trustee.

IN WITNESS WHEREOF, the Company and Trustee have caused these presents to be signed and their seals to be hereunto affixed and attested by their duly authorized officers all as of the day and year first above written.

FERRELL COMPANIES, INC.

By: ______________________
Its: ______________________

LASALLE NATIONAL BANK

By: ______________________
Its: ______________________

\50625\011\20TRTSHS.003

EXHIBIT A

## INDEMNIFICATION

15. Indemnification. For purposes of this Section 15, the term "Indemnitees" shall mean the Trustee and its officers, directors, employees, and agents. Subject to the applicable provisions of ERISA, the Company shall indemnify the Indemnitees for any loss, cost, expense, or other damage, including attorney's fees, suffered by any of the Indemnitees resulting from or incurred with respect to any proceedings related in any way to the performance of services by any one or more of the Indemnitees pursuant to this Agreement. The indemnification provided for in this Section 15 shall extend to: (a) any action taken or not taken by any of the Indemnitees at the direction or request of the Plan Administrator or of any agent of the Plan Administrator; and (b) all reasonable costs and expenses incurred by the Indemnitees in enforcing the indemnification provisions of this Section 15, including reasonable attorney's fees and court costs. However, these indemnification provisions shall not apply to the extent that any loss, cost, expense, or damage with respect to which any of the Indemnitees shall seek indemnification is held by a court of competent jurisdiction, in a final judgment from which no appeal can be taken, to have resulted either from the gross negligence of one or more of the Indemnitees or from the willful misconduct of one or more of the Indemnitees, or from the violation of any fiduciary or other duties imposed under ERISA by anyone or more of the Indemnitees.

16. Defense of Actions. (a) Notice and Assumption of Defense. If one or more of the Indemnitees receives notice of any legal proceeding with respect to which indemnification may be sought against the Company pursuant to Section 15 (a "Proceeding"), the Indemnitees shall notify the Company of the Proceeding in writing within 10 days of the commencement of the Proceeding. However, failure by the Indemnitees to so notify the Company shall not relieve the Company from any liability, except to the extent that the failure to notify the Company shall actually have prejudiced the defense of any Proceeding. The Company will be entitled to assume the defense of the Proceeding with counsel reasonably satisfactory to the Indemnitees or to otherwise participate in the Proceeding. If the Company elects to assume the defense of the Proceeding, it then shall pay all costs of defense.