IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

| | | |
|---|---|---|
| FERRELL COMPANIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 2:20-cv-02229-JWL-KGG |
| | ) | |
| GREATBANC TRUST COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL**

Ferrell's Opposition (Dkt. 76) avoids all matters of substance or consequence. Its argument raises immaterial distinctions with cases cited in GreatBanc's Motion to Compel ("Motion") (Dkt. 74-75) and relies on snippets from cases that purportedly (but don't actually) support Ferrell's arguments. (Dkt. 76 at 3-10.)[1] Indeed, because Ferrell's positions are antithetical to the discovery rules, the cases Ferrell relies on undermine its own arguments. The Opposition does nothing to refute GreatBanc's arguments or justify Ferrell's obstructionism. GreatBanc respectfully requests that the Court grant the Motion and (i) compel Ferrell to produce all documents responsive to Requests 10-14 of GreatBanc's First Set of Requests for Production (collectively, "Bridger Requests") and (ii) order Ferrell to pay GreatBanc's reasonable expenses for the Motion, including this Reply.

**ARGUMENT**

"'Our system of discovery was designed to increase the likelihood that justice will be served in each case, not to promote principles of gamesmanship and deception in which the person who hides the ball most effectively wins the case.'" *Champion Foodservice, LLC v. Vista Food Exch., Inc.*, 2016 WL 4468000, at *17 (N.D. Ohio Aug. 23, 2016) (citation omitted). The relevance

---

[1]    This Reply refers to the Memorandum as the "Motion" and cites to it as "Dkt. 75."

standard in discovery advances the aims of our system: "Relevance is broadly construed at the discovery stage . . . and a request for discovery should be considered relevant if there is any possibility the information sought may be relevant to the subject matter of the action." *AKH Co. v. Universal Underwriters Ins. Co.*, No. 13-2003-JAR-KGG, 2014 WL 2991130, at *2 (Gale, Mag. J.) (D. Kan. July 3, 2014). As shown in the Motion, the Bridger Requests seek relevant discovery.

The party resisting discovery "has the burden to support its objections." *See Ezfauxdecor, LLC v. Smith,* No. 15-9140-CM-KGG, 2017 WL 2721489, at *2 (Gale, Mag. J.) (D. Kan. June 23, 2017). Ferrell does not meet its burden. *See Finley v. City of Colby, Kansas*, No. 17-CV-01215-EFM-KGG, 2019 WL 2342975, at *2 (Gale, Mag. J.) (D. Kan. June 3, 2019) (noting objecting party "must specifically show . . . despite the broad and liberal construction afforded by the federal discovery rules, how each request . . . is objectionable"). Ferrell's conclusory arguments seek to obstruct discovery and conceal the truth. They should be rejected in their entirety.

A.      **Ferrell's Silence on Its About-Face on Bridger Discovery.**

Both parties recognized Bridger's relevance in their discovery disclosures, discovery requests, and planning report to the Court. (Dkt. 75 at 4-6.). Ferrell offers no explanation for its about-face on this discovery, other than to say it offered to "strike" these allegations from its own Complaint. (Dkt. 76 at 2, 9.) Ferrell's "offer" was a tactical move aimed at limiting discovery, not a good faith attempt to resolve this dispute. And even if Ferrell struck these allegations (or amended its Complaint), the Bridger Requests would remain relevant under Rule 26(b)(1).[2]

B.      **Ferrell's Conclusory Arguments on Relevance Have No Merit.**

The Opposition does not challenge GreatBanc's assertion that "it's impossible to imagine how the merits of this case can ultimately be weighed and decided without evidence relating to

---

[2]      Putting aside Ferrell's improper tactics, GreatBanc believes the proper procedure would be for Ferrell to seek leave to file an amended complaint, not to strike the allegations. In any event, Ferrell has done neither.

Bridger." (Dkt. 75 at 16.) Instead, it rests on conclusory arguments that boil down to this: Bridger

discovery is irrelevant because Ferrell says so. Of course, that's not how discovery works.

### 1.      Bridger is Not "Mere Background," It Underlies Ferrell's Claims.

To support Ferrell's assertion that the Bridger allegations are "mere background" relating

to motive, the Opposition quotes a portion of one allegation from the Complaint, stating GreatBanc

was "'motivated to participate in the hostile takeover efforts of third parties (and preserve its role

as Directed Trustee) to avoid liability for its role in the failed Bridger investment.'" (Dkt. 76 at 5)

(emphasis added).[3] "Thus," according to Ferrell, "[it] included the [Bridger] allegations for mere

background purposes—specifically, to offer a motive for the alleged wrongful conduct." (*Id.*)

First, Ferrell's position would thwart the purpose and spirit of discovery by allowing

plaintiffs to limit discovery when and how they see fit. *See*, *e.g.*, *Champion Foodservice, LLC*,

2016 WL 4468000, at *1 ("If parties are permitted to abuse or manipulate the discovery process

based upon their own self-serving interpretation of the Federal Rules, our system of justice will

not work."). Second, "[r]elevancy . . . is an undemanding standard and includes even 'background

information' that would be inadmissible at trial." *U.S. v. 4.620 Acres of Land, more or less, in

Hidalgo Cty., Tex.*, 2021 WL 973460, at *1 (S.D. Tex. Mar. 16, 2021). Third, Ferrell ignores the

other twenty-plus allegations in the Complaint that directly reference Bridger and show its

centrality to this case (*E.g.*, Dkt. 1 at 2-3 and ¶¶ 14-19, 24), and instead raises immaterial

distinctions with GreatBanc's cases and relies cases that don't support Ferrell's arguments.

---

[3]      The Opposition defines Ferrell as "Ferrellgas" (Dkt. 76 at 1), while the Complaint alleges "there are multiple corporate entities that fall under that name [*i.e.* "Ferrellgas"], which entities are all separate and distinct" (Dkt. 1 at 2 n.1). Although the same Board governs these "multiple corporate entities" (*see id.* at ¶ 9), for purposes of this Reply, "Ferrell" refers to Plaintiff and "Ferrellgas" refers to the overall corporate structure.

### a.      Ferrell's misguided efforts to distinguish cases cited in the Motion.

GreatBanc cited cases to support the assertion that "Ferrell's self-serving attempt to downplay [the Bridger] allegations [does not] narrow the scope of discovery[.]" (Dkt. 75 at 15, 18.) One such case, *Isberner v. Walmart, Inc.*, No. 20-2001-JAR-KGG, 2020 WL 6044097 (Gale, Mag. J.) (D. Kan. Oct. 13, 2020), sets out the relevance standard for discovery. Ferrell spends almost half a page discussing factual differences that purportedly render *Isberner* "inapposite" (Dkt. 76 at 5), while ignoring the standard that applied there (and that applies here): "'Relevant information is "any matter that bears on, or that reasonably could bear on," any party's claims or defenses.'" *Isberner*, 2020 WL 6044097, at **1-2. The Bridger Requests meet this standard.

GreatBanc cited *State Farm Mut. Auto. Ins. Co. v. Physicians Inj. Care Ctr., Inc.*, 2008 WL 11337641, at *4 (M.D. Fla. Oct. 17, 2008) for the principle that "[a] party is entitled to the underlying facts that support the allegations raised in a complaint." (Dkt. 75 at 18.) Ferrell suggests this doesn't apply here because *State Farm* involved a dispute over depositions and was silent on "whether a party is entitled to discovery on allegations that merely supply background information." (Dkt. 76 at 5.) That just begs the question Ferrell never answers: how and why should Bridger be viewed as "mere background" and deemed irrelevant on that basis?

To address the Amended Responses' bald assertions that "GreatBanc's motive is not actually relevant to the case" (Dkt. 75-4 at Response Nos. 10-14), the Motion cited *Wildman v. Am. Century Servs.*, LLC, 2017 WL 5068516, at **2-3 (W.D. Mo. July 27, 2017), a case finding that discovery on defendant's motive was relevant to claims for breach of fiduciary under ERISA. The Opposition does not challenge this proposition. Instead, it suggests motive is irrelevant because Ferrell apparently decided it doesn't need evidence relating to motive. (*See* Dkt. 76 at 1, 3, 6-7.) And because Ferrell's assertions are not supported by facts or law, the Opposition attempts

to distinguish *Wildman* by arguing that the requests in that case "related to defendants' oversight of the [retirement] Plan," whereas the "Bridger documents do not relate to GreatBanc's oversight of the ESOP" but "to an irrelevant acquisition . . . of a non-party to the litigation." (*Id.* at 7.)

Ferrell's assertion that the Bridger Requests seek discovery on "an irrelevant acquisition" ignores that the Complaint alleges GreatBanc engaged in the purported "scheme" to avoid liability on the Bridger acquisition. (Dkt. 1 at 2-3 and ¶¶ 15, 18-20, 31.) It also ignores that the Bridger Requests encompass documents relating to Bridger's failure and actions by Ferrell and its Board that exacerbated the impact of Bridger's failure. (Dkt. 75 at 7-14, 16-17.) Moreover, Ferrell fails to appreciate that "motive" is defined as "'the cause or reason that induces action.'" *In re Grillot*, No. 16-11262, 2017 WL 4286882, at *4 (Bankr. D. Kan. Sept. 22, 2017). The causes and reasons for GreatBanc's actions are relevant to the claims and defenses. Ferrell cannot show otherwise.

        **b.**        **Ferrell relies on cases that do not support its relevance arguments.**

The cases Ferrell relies on stand for the general proposition that information must be relevant to be discoverable. None support Ferrell's positions. *Kaiser Found. Hosp. v. Cal. Nurses Ass'n*, 2012 WL 440634 (N.D. Cal. Feb. 10, 2012), involved defendant's motion to dismiss the complaint or strike allegations, including "background allegations" defendant argued would "'needlessly stretch the scope of discovery[.]'" *Id.* at **2, 4. The court denied the motion and rejected the discovery-based argument, noting Rule 26(b)(1) governs discovery and "[a] party is not entitled to discovery of a factual issue merely because it is alleged in the pleadings." *Id.* at *4. Ferrell latches onto this language as supportive of its arguments without making any attempt to explain how or why it should apply here. (Dkt. 76 at 6.)

In Ferrell's next (and primary) case for this argument, *Emergency Servs. of Okla., PC v. Aetna Health, Inc.*, 2020 WL 6813218 (W.D. Okla. Nov. 19, 2020), plaintiffs sought additional

payments on claims for medical care provided to defendants' members. *Id.* at \*1. As the complaint alleged, the "action concern[ed] only the *rate of* payment to which [p]laintiffs are entitled," which was a matter of state law. *Id.* at \*2 (emphasis in original). The discovery at issue, served some two years into the case, sought documents on TeamHealth Holdings, Inc. ("TeamHealth"), a non-party that "acquired or became affiliated with [p]laintiffs in 2010." *Id.* at \*1.[4]

After plaintiffs objected, defendants waited for over a year to move to compel. As stated in plaintiffs' response, "the operative Amended Complaint does not assert any allegations or claims whatsoever relating to or relying on an acquisition or affiliation transaction with TeamHealth."[5] In fact, TeamHealth is not mentioned in the original or amended complaint.[6] The court agreed it was a "straightforward dispute" concerning the rate of reimbursement under state law and denied the motion, finding that no claims, defenses, or counterclaims "extend the relevant issues in the case" to TeamHealth. *Emergency Services*, 2020 WL 6813218 at \*2.

Ferrell equates *Emergency Services* to this case, arguing "[t]he same rationale applies here." (Dkt. 76 at 6.) But context matters. Here, the Complaint is replete with Bridger-related allegations and, as both parties have recognized, Bridger is relevant to the claims and defenses. (*E.g.*, Dkt. 75 at 2-5, 16-17.) Nor does Ferrell assert "straightforward claims," as the Opposition baldly asserts. (Dkt. 76 at 6.) The Complaint alleges that GreatBanc breached contractual obligations and fiduciary duties under ERISA by collaborating with multiple third-parties in a

---

[4]     The disputed requests in *Emergency Services* were served in February and May 2019, some two years into the case. *See* Defendants' Second Motion to Compel, Oct. 1, 2020, Dkt. 108 at 4-5, No. 17-cv-600-J (W.D. Okla.).

[5]     Plaintiffs' Response in Opposition to Defendants' Second Motion to Compel, Oct. 22, 2020, Dkt. 109 at 9-10, *Emergency Servs. of Okla., PC v. Aetna Health, Inc.*, No. 17-cv-600-J (W.D. Okla.).

[6]     *See* Petition, May 30, 2017, Dkt. 1-2 and First Amended Complaint, Nov. 10, 2017, Dkt. 33, *Emergency Servs. of Okla., PC v. Aetna Health, Inc.*, No. 17-cv-600-J (W.D. Okla.).

purported "scheme" to takeover Ferrellgas and "hijack[]" its Board. (*E.g.*, Dkt. 1 at 2-3 and ¶¶ 20, 45.) In sum, *Emergency Services* further exposes the hollowness of Ferrell's arguments.

### 2.    Bridger Discovery is Relevant to GreatBanc's Defenses.

A section heading in the Opposition asserts: "[i]nformation related to the Bridger Acquisition will not support GreatBanc's defenses to Ferrellgas' claims." (Dkt. 76 at 7.) According to the Opposition, this is because (i) GreatBanc did not assert an unclean hands defense and (ii) GreatBanc's affirmative defense for breach of fiduciary duty is "insufficient as a matter of law," as Ferrell argued in its then-pending motion to strike affirmative defenses. (*Id.* at 7-8.) Again, Ferrell ignores that the Bridger Requests encompass documents relating to Bridger's failure and actions by Ferrell and its Board that exacerbated the impact of Bridger's failure. (Dkt. 75 at 7-14, 16-17.) The relevance of this discovery doesn't hinge on whether GreatBanc asserted an unclean hands defense.[7] And while its relevance didn't hinge on the outcome of Ferrell's motion to strike, the Court denied Ferrell's motion on April 28, 2021. (*See* Dkt. 79 at 3) (declining to strike defense for breach of fiduciary duty where GreatBanc argues "that damages asserted by plaintiff were actually caused by plaintiff's own breach and not by the alleged breaches by defendant").

GreatBanc believes Bridger discovery will refute Ferrell's claims and support GreatBanc's defenses, including but not limited to its affirmative defense based on breaches of fiduciary duty by Ferrell and the Board. (Dkt. 75 at 16-17.) The basis for this belief is set forth in the Motion's background of events (*id.* at 2-14), which the Opposition does not challenge. Any alleged harm in this case was caused by misconduct and breaches of fiduciary by Ferrell and the Board. GreatBanc

---

[7]    The Opposition seems to suggest that Ferrell's claims are legal rather than equitable in nature. (Dkt. 76 at 7.) While that has no bearing on this discovery dispute, GreatBanc notes its Third Affirmative Defense asserts that Ferrell's contract claim is preempted under ERISA. (Dkt. 52.) Case law indicates that Ferrell's claim for breach of fiduciary duty under ERISA is equitable in nature. *See In re YRC Worldwide, Inc. ERISA Litig.*, No. 09-2593-JWL, 2010 WL 4920919, at **4-6 (D. Kan. Nov. 29, 2010).

fulfilled its duties under ERISA, taking appropriate and reasonable steps aimed at protecting the ESOP. At a time where cooperation and openness were essential to these efforts, the Board summarily rejected GreatBanc's requests, froze GreatBanc out, undercut its ability to protect the ESOP, and then removed it as trustee. (*Id.* at 11-13.)

GreatBanc believes the Board's decision-making with respect to GreatBanc was driven, in whole or in party, by the Board's desire to conceal its misconduct on Bridger – as evidenced by the crime-fraud ruling in the Eddystone Litigation, among other things. (*Id.* at 7-11, 16-17.) The Bridger Requests seek discovery that bear directly on the claims and defenses. Ferrell cannot show otherwise. *See Sartori v. Susan C. Little & Assocs., P.A.*, 2013 WL 11785117, at *2 (D.N.M. June 12, 2013) ("A party may discover[] any matter that is relevant to a claim, issue, or defense that is pleaded in a case, regardless of which party raises the claim, issue, or defense. Parties are entitled to learn, to the fullest practical extent, the evidence that supports or refutes claims and defenses.")

## C.   Ferrell's Undue Burden and Proportionality Objections Have No Merit.

The Amended Responses objected to the Bridger Requests "as unduly burdensome and not proportional to the needs of this case insofar as the information sought has no relationship to the claims or defenses at issue in this litigation." (Dkt. 75-4 at Response Nos. 10-14.) The Opposition attempts to bolster these boilerplate objections by targeting portions of the Bridger Requests seeking "[a]ll documents and communications" that "evidence or reflect" or "refer or relate" to the requested subject matter. (Dkt. 76 at 8-9.) Ferrell's arguments have no factual or legal basis.

First, Ferrell's own requests sought "[a]ll documents and communications related [or relating] to" various subjects, including the Bridger acquisition.[8] Second, the Amended Responses

---

[8]   *E.g.*, Ferrell's First Interrogatories and Requests for Production of Documents, Nov. 2, 2020, at Request 11 (seeking "[a]ll documents and communications related to Ferrellgas' acquisition of Bridger Logistics, LLC," which GreatBanc agreed to produce without objection). Ferrell included similar language in several other requests.

did not object to the Bridger Requests based on omnibus terms. (Dkt. 75-4 at Response Nos. 10-14.) Third, Ferrell knows what (and at least roughly how many) documents are encompassed by the Bridger Requests. *See* Dkt. 76 at 3 (representing it consists of "many thousands of documents").[9] Fourth, while "discovery requests may be facially overly broad when employing an omnibus term such as 'relating to,' 'pertaining to,' or 'concerning,'" *Transp. Sys., Inc. v. TAFS, Inc.*, No. 20-2379-HLT-KGG, 2021 WL 877003, at *4 (Gale, Mag. J.) (D. Kan. Mar. 9, 2021), "'[t]hat rule . . . applies only when the omnibus term is used with respect to a general category or broad range of documents'" *Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*, No. 13-2150-CM-KGG, 2014 WL 2815515, at *5 (Gale, Mag. J.) (D. Kan. June 23, 2014). The rule is designed to "avoid a situation in which a party upon whom discovery is served needs 'either to guess or move through mental gymnastics . . . to determine which of many pieces of paper may conceivably contain some detail, either obvious or hidden, within the scope of the request.'" *Fox v. Pittsburg State Univ.*, No. 14-2606-JAR-KGG, 2015 WL 7572301, at *2 (Gale, Mag. J.) (D. Kan. Nov. 24, 2015) (citation omitted). Thus, "'[w]hen the omnibus phrase modifies a sufficiently specific type of information, document, or event, rather than large or general categories of information or documents, the request will not be deemed objectionable on its face.'" *Transp. Sys., Inc.*, 2021 WL 877003, at *4 (citation omitted).

The Opposition cites *Moss v. Blue Cross and Blue Shield of Kan., Inc.*, 241 F.R.D. 683 (D. Kan. 2007), a case arising under the FMLA. (Dkt. 76 at 9.) On the one hand, the court in *Moss* sustained objections to a request that sought "'[a]ny and all documents . . . *relating* to any legal action in which defendant has been involved'" where the legal actions encompassed "all forms of

---

[9]     Ferrell does not argue that the number of documents at issue render the Bridger Requests unduly burdensome or disproportionate to the needs of this case. Nor can it. GreatBanc has produced over 5,000 documents in this case. To date, Ferrell's production consists of 1,503 documents, 740 of which came from custodians associated with Houlihan Lokey, which Ferrell likely received in its state court action against Houlihan.

employment discrimination." 241 F.R.D. at 693-94 (emphasis in original). On the other hand, it overruled objections to requests that sought "'[a]ny complaints'" by any of defendant's employees that "relate to" specific individuals. *Id.* at 696-97. Thus, requests that modify or limit omnibus terms are not facially objectionable. *See id.* at 693-94, 696-97. *See also Fox*, 2015 WL 7572301, at **2-3 (sustaining or overruling objections based on whether omnibus terms were sufficiently modified or limited by the requests).

The Bridger Requests seek "[a]ll documents" or "[a]ll documents and communications" that:

- "evidence or reflect any due diligence, analysis, or opinions that were relied upon for purposes of the Bridger Transaction";

- "evidence or reflect the 'confluence of factors [that] resulted in Bridger's failure,' as [Ferrell] allege[s] in paragraph 17 of the Complaint";

- "refer or relate to any actual or alleged breaches of the Rail Services Agreement between Bridger Transfer Services, LLC ("BTS") and Eddystone Rail Company";

- "refer or relate to the sale of BTS or any transfer of its assets[,] includ[ing] but not limited to all documents and communications that Ferrellgas was compelled to produce in the Eddystone Litigation pursuant to the court's ruling on the crime-fraud exception"; and

- "refer or relate to any suspension, cancelation, or termination of any contracts between Bridger (or any other Ferrellgas entity) and Monroe Energy, LLC [*i.e.*, Bridger's largest customer]."

(Dkt. 75-2 at Requests 10-14.) Ferrell doesn't argue (nor could it argue) that it must "guess or move through mental gymnastics" to determine what documents are sought by the Bridger Requests. The omnibus terms are sufficiently modified or limited by the Bridger Requests: each seeks discovery on specific entities, specific transactions, or specific events—all known to Ferrell. The Bridger Requests are not facially objectionable. Moreover, Requests 12-14 seek documents that Ferrellgas has produced (or likely produced) in the Eddystone Litigation. (*See* Dkt. 75 at 7-

10

11.) Nor does Ferrell meet its burden of "specifically show[ing] . . . how each request for production . . . is objectionable." *See Everlast World's Boxing Headquarters Corp.*, 2014 WL 2815515, at **4-7.

However, if the Court disagrees and finds that any Bridger Request is facially overbroad, unduly burdensome, or disproportional, then GreatBanc respectfully requests that the Court direct Ferrell to produce documents to any portions the Court finds not objectionable. *See N.U. v. Wal-Mart Stores, Inc.*, No. 15-4885-KHV, 2016 WL 3654759, at *4 (D. Kan. July 8, 2016) ("[T]he court will generally require a response where adequate guidance exists to determine to what extent the request is not objectionable.") (citing *Moss*, 241 F.R.D. at 690).

**D.      Ferrell Should Pay GreatBanc's Costs and Expenses for Making the Motion.**

Under Rule 37(a)(5)(A), when a motion to compel is granted, the "court must award fees and expenses unless," as pertinent here, the opposing party's position was "substantially justified." *Ad Astra Recovery Servs., Inc. v. Heath*, No. 18-1145-JWB, 2020 WL 6939748, at *5 (D. Kan. Nov. 25, 2020). Courts generally find a position substantially justified "if it is 'justified to a degree that could satisfy a reasonable person' or if 'reasonable people could differ as to the appropriateness' of the objection or response." *Ardent Mills, LLC v. Archer-Daniels-Midland Co.*, No. 12-2171-EFM, 2015 WL 1241680, at *2 (D. Kan. Mar. 18, 2015).

Unlike *Ardent Mills*, a case cited by the Opposition (Dkt. 76 at 10), this dispute was precipitated by Ferrell's tactical decisions to obstruct discovery. The Opposition does not refute the background or arguments set forth in the Motion. Rather, it tacitly confirms that Ferrell's positions on the Bridger Requests are factually and legally baseless. Ferrell's tactical "offer" to strike these allegations was a non-solution to a problem of Ferrell's own making. Ferrell's

positions were not "substantially justified." GreatBanc respectfully requests that the Court award

GreatBanc reasonable expenses incurred to make the Motion, including expenses for this Reply.

<b><u>CONCLUSION</u></b>

For the reasons above, as well as those in the Motion to Compel (Dkt. 74-75), GreatBanc

respectfully requests that the Court: (i) grant the Motion and order that Ferrell produce discovery

sought by the Bridger Requests; (ii) award GreatBanc reasonable expenses incurred for its Motion

and Reply pursuant to Rule 37; and (iii) award any other relief the Court deems just and proper.

Dated:  April 28, 2021

*Of Counsel:*

AKERMAN LLP
Mark S. Bernstein (admitted *pro hac vice*)
Shawn M. Taylor (admitted *pro hac vice*)

71 South Wacker Drive, 47th Floor
Chicago, IL 60606
Telephone: 312-634-5700
Facsimile: 312-424-1900
Email: mark.bernstein@akerman.com
        shawn.taylor@akerman.com

Respectfully submitted,

SHOOK, HARDY & BACON L.L.P.

By:  */s/ Todd W. Ruskamp*
     Todd W. Ruskamp, D.Kan #70412
     Jessica A.E. McKinney, D.Kan #78649

2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone: 816-474-6550
Facsimile: 816-421-5547
Email: truskamp@shb.com
        jamckinney@shb.com

*Attorneys for Defendant GreatBanc Trust Co.*

<b><u>CERTIFICATE OF SERVICE</u></b>

I hereby certify that on April 28, 2021, I electronically filed the foregoing with the Court

by using the Court's electronic filing system, which sent out notification of such filing to all

counsel of record.

 */s/ Todd W. Ruskamp*
 *An attorney for GreatBanc Trust Company*

12