IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| FERRELL COMPANIES, INC., | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 20-2229-JWL-KGG |
| GREATBANC TRUST COMPANY, | ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM & ORDER DENYING MOTION TO COMPEL

Now before the Court is Defendant's Motion to Compel. (Doc. 75.) Having reviewed the submissions of the parties, Plaintiff's objections are **sustained** and Defendant's motion is **DENIED**.

## BACKGROUND

Ferrell Companies, Inc. ("Ferrell") brings claims against GreatBanc Trust Company ("GreatBanc") for breach of contract and breach of fiduciary duties. (Doc. 1, ¶¶ 39-45.) Plaintiff alleges that Defendant breached its contract ("Trust Agreement") by prioritizing third party interests above the interests of the Plan Participants. (*Id.*, at ¶ 39.) Additionally, Plaintiff alleges that Defendant breached its duties owed to Ferrell employees by failing to "[a]ct in accordance with the documents and instruments governing the Plan by its attempted hijacking of . . . Ferrell. . . ." (*Id.*, at ¶ 45.)

1

Ferrell established the "Plan" in 1996, which offers employees a share of ownership in Ferrell Companies through Employee Stock Ownership Trust. (*Id.*, at ¶ 8.) Ferrell entered into a Trust Agreement with LaSalle National Bank, ("LaSalle") in which LaSalle became the Directed Trustee and oversaw the Plan—which came to be known as "ESOP." (*Id.*, at ¶ 10.) LaSalle oversaw ESOP as the Directed Trustee until 2005 when GreatBanc acquired LaSalle and became the new trustee. (*Id.*) GreatBanc's responsibility as the directed trustee was to "[a]ct with prudence and solely in the interest of Plan Participants." (*Id.*, at ¶ 12.)

Ferrell acquired Bridger Logistics LLC ("Bridger") in 2015 as an opportunity to diversify. (*Id.*, at ¶ 14.) Pursuant to an agreement beyond its normal trustee duties, GreatBanc was to assess the Bridger transaction on behalf of the Plan Participants. (*Id.*, at ¶ 15.) After doing its own review, GreatBanc concluded that the acquisition was in the best interest of the Plan Participants. (*Id.*) Other related entities also evaluated the Bridger Acquisition. (*Id.*, at ¶ 16) Bridger turned out to be a very costly and disadvantageous acquisition. (*Id.*, at ¶ 17) Plaintiff asserts that GreatBanc, fearing blame for the acquisition decision, began interfering with Ferrell management. (*Id.*, at ¶ 18.)

Plaintiff continues that GreatBanc acted more as an "activist" than a Directed Trustee. (*Id.*, at ¶ 24.) GreatBanc's alleged activism led to Ferrell

sending a Notice of Removal to GreatBanc in 2019.  (*Id.*, at ¶ 29.)  James Urbach and his company took over as an interim successor trustee.  (*Id.*, at ¶ 28.)

Fearing legal redress from Ferrell's newly appointed trustee, Plaintiff contends that Defendant helped financial interests—including banks, investment firms, and hedge funds—wrongfully take control of Ferrell.  (*Id.*, at 2 and ¶¶ 30-31.)  Plaintiff alleges that GreatBanc "[d]elivered a written ultimatum that Ferrell Companies . . . direct GreatBanc . . . to replace its entire Board . . . with new directors—secretly hand-picked by Houlihan Lokey for GreatBanc. . . ."  (*Id.*, at ¶ 32.)  In response, Ferrell filed suit against GreatBanc and it was removed as Directed Trustee.  (*Id.*, at ¶ 35)

The present motion arises from Plaintiff's responses to discovery served by Defendant.  (*See generally* Doc. 76.)  Defendant seeks:

>  **RFP No. 10:** All documents and communications that evidence or reflect any due diligence, analysis, or opinions that were relied upon for purposes of the Bridger Transaction.
>
> **RFP No. 11:** All documents and communications that evidence or reflect the "confluence of factors [that] resulted in Bridger's failure," as You allege in paragraph 17 of the Complaint.
>
> **RFP No. 12:** All documents that refer or relate to any actual or alleged breaches of the Rail Services Agreement between Bridger Transfer Services, LLC ("BTS") and Eddystone Rail Company.

3

> **RFP No. 13:** All documents and communications that refer or relate to the sale of BTS or any transfer of its assets. This Request includes, but is not limited to, all documents and communications that Ferrellgas was compelled to produce in the Eddystone Litigation pursuant to that court's ruling on the crime-fraud exception.
>
> **RFP No. 14:** All documents and communications that refer or relate to any suspension, cancelation, or termination of any contracts between Bridger (or any other Ferrellgas entity) and Monroe Energy, LLC.

(*Id.*, at 2.) Plaintiff objects to Defendant's request for Production Nos. 10 and 11 because they seek "[a]ll documents and communications *that evidence or reflect* any due diligence, analysis, or opinions that were relied upon for purposes of the Bridger Transaction." (*Id.*, at 9.) Additionally, Plaintiff objects to request for Production Nos. 12, 13, and 14 because Defendant seeks "[a]ll documents and communications *that refer or relate* to" certain categories of information. (*Id.*, at 8) Plaintiff also offered to strike Bridger-related allegations from its Complaint in response to Defendant's request for production. (Doc. 75, Ex. C.)

Defendant maintains that the information is relevant, and that production of documents will support its affirmative defense. (*Id.*, at 4-5, 16.) In response to Defendant's motion, Plaintiff first argues that "the requested documents . . . cannot support GreatBanc's defenses based on Ferrellgas' purported breach of its own fiduciary duties, because those defenses are insufficient as a matter of law." (Doc.

4

76, at 8.) Second, Plaintiff contends that production of documents would be unduly burdensome because "[r]equests that seek all documents and communications that 'refer or relate to' . . . a broad subject matter are unduly burdensome." (*Id.*, at 9.)

Defendant replies that Plaintiff's caselaw does not support its position that "information must be relevant to be discoverable." (Doc. 80, at 5.) Further, Defendant contends that Plaintiff's undue burden objections have no merit and that discovery is relevant to its affirmative defense. (*Id.*, at 7-8.)

## **ANALYSIS**

I.     **Standards for Discovery.**

Fed. R. Civ. P. 26(b) states that

> [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at state in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

As such, the requested information must be nonprivileged, relevant, and proportional to the needs of the case to be discoverable. ***Holick v. Burkhart***, No.16-1188-JTM-KGG, 2018 WL 372440, at *2 (D. Kan. Jan. 11, 2018).

5

Discovery requests must be relevant on their face. ***Williams v. Bd. of County Comm'rs***, 192 F.R.D. 698, 705 (D. Kan. 2000). Relevance is to be "broadly construed at the discovery stage of the litigation and a request for discovery should be considered relevant if there is any possibility the information sought may be relevant to the subject matter of the action." ***Smith v. MCI Telecommunications Corp.***, 137 F.R.D. 25, 27 (D. Kan. 1991).

Once this low burden of relevance has been established, the legal burden regarding the defense of a motion to compel resides with the party opposing the discovery request. *See* ***Swackhammer v. Sprint Corp. PCS***, 225 F.R.D. 658, 661, 662, 666 (D. Kan. 2004) (stating that the party resisting a discovery request based on overbreadth, vagueness, ambiguity, or undue burden/expense objections bears the burden to support the objections). Thus, "the objecting party must specifically show in its response to the motion to compel, despite the broad and liberal construction afforded by the federal discovery rules, how each request for production or interrogatory is objectionable." ***Sonnino v. University of Kansas Hosp. Authority***, 221 F.R.D. 661, 670–71 (D. Kan. 2004).

## II.   Discovery at Issue.

Defendant requests all documents and communications from January 1, 2015, to the present that refer or relate to the Bridger acquisition and failure. (Doc. 75, at 4-5.) It is uncontested that both parties use the Bridger acquisition as

background for their claims and defense.  (Doc. 1, ¶ 15.)  It remains contested whether the documents relating to the Bridger transaction are relevant, overly broad, and unduly burdensome.

Defendant contends that the information sought is relevant because it underlies Plaintiff's claims related to the Bridger Acquisition.  Plaintiff asserts that the allegations in its Complaint relating to Bridger are simply for background purposes to offer a motive for Defendant's alleged wrongdoing.  (Doc. 76, at 5.)  As such, whether the documents establish wrongdoing, they are not relevant because they do not establish whether GreatBanc was motivated to engage in a hostile takeover of Ferrell to limit its liability related to Bridger.

Defendant continues that it is entitled to the documents because a party is entitled to the "[u]nderlying facts that support the allegations raised in a complaint."  (Doc. 75, at 18.) (citing ***State Farm Mut. Auto. Ins. Co. v. Physicians Inj. Care Ctr., Inc.***, 2008 WL 11337641, at *4 (M.D. Fla. Oct. 17, 2008)  Plaintiff responds by asserting that the court in *State Farm* did not address the issue of whether a party is entitled to discovery based on allegations made in a Complaint that are provided as background information.  (Doc. 76, at 5.)  As such, Defendant has not demonstrated how it is entitled to Bridger-related documents beyond Plaintiff mentioning the Bridger acquisition in its Complaint.

The requested discovery seeks to learn the causes of the Bridger acquisition and failure. While the Complaint alleges that the Defendant was motivated in part by its concern that it might be blamed in some way for the ill-fated business decision, the Complaint does not place the blame on Defendant. Plaintiff has not sued Defendant for its part in that decision, and the reasons for the acquisition decision and the failure of Bridger are not relevant to the parties' claims and defenses. In short, Defendant has not demonstrated how production of the Bridger documents are relevant. **DIRECTV, Inc. v. Puccinelli**, 224 F.R.D. 677, 684 (D. Kan. 2004) (holding that "[w]hen relevancy is not apparent on the face of the . . . request, the party seeking the discovery has the burden to show the relevancy of the information or documents sought.").

The Court thus finds that Defendant has not established that the documents requested are relevant and **sustains** Plaintiff's objections. Defendant's motion to compel (Doc. 75) is, therefore, **DENIED**.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Compel (Doc. 75) is **DENIED**, and Defendant's Motion for Sanctions is **DENIED**[1].

---

[1] Defendant requests reasonable expenses incurred in bringing this Motion. (Doc. 75, at 19.) However, Defendant's Motion was not granted, and Plaintiff made good-faith efforts to avoid this dispute. (Doc. 76, at 9.) **Payless Shoesource Worldwide, Inc. v. Target Corp.,** 237 F.R.D. 666, 670 (D. Kan. 2006) (holding that reasonable efforts to confer require "[t]hat the parties in good faith converse, confer, compare views, consult and deliberate, or in good faith attempt to do so.")

**IT IS SO ORDERED.**

Dated this 4th day of June, 2021, at Wichita, Kansas.

       s/ Kenneth G. Gale
       HON. KENNETH G. GALE
       U.S. MAGISTRATE JUDGE